No. 96-527

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

IN RE THE MARRIAGE OF

THEODORE C. McFARLAND,

     Petitioner and Respondent,

  and

MARLA R. McFARLAND, n/k/a MARLA R. WARD,

     Respondent and Appellant.

---

MARLA R. McFARLAND, n/k/a MARLA R. WARD,

     Plaintiff and Appellant.

  v.

THEODORE C. McFARLAND and
CLINTON L. McFARLAND,

     Defendants and Respondents.

FILED

FEB 18 1997

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

---

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert W. Holmstrom, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          Randy S. Laedeke; Laedeke Law Office, Billings,
Montana

     For Respondents:

          James A. Patten; West, Patten, Bekkedahl &
Green, Billings, Montana

---

Submitted on Briefs: December 5, 1996
Decided: February 18, 1997

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

This is an appeal by Marla R. Ward, formerly known as Marla R. McFarland (Marla), from orders entered on June 4, 1996, by the Thirteenth Judicial District Court, Yellowstone County, determining that her postjudgment motion had been deemed denied by operation of law, and granting the motion of Theodore C. McFarland (Theodore) compelling her to enter a partial satisfaction of judgment. We affirm the court's order on Marla's motion and, on that basis, also affirm the court's order granting Theodore's motion.

## BACKGROUND

This case arises out of a proceeding for dissolution of marriage instituted by Theodore, during the course of which Marla asserted an action as plaintiff against Theodore and his father, Clinton L. McFarland (collectively, McFarlands). The District Court filed its findings, conclusions and order in those underlying proceedings on November 13, 1995. In pertinent part, and in addition to dissolving the parties' marriage, the court distributed therein Theodore and Marla's marital assets, with the exception of the Lazy Heart Nine cattle. With regard to the cattle, it found that Theodore had 22 of the cattle at the time of the marriage,

2

that Marla helped increase the number during the marriage, and that Theodore's father held the cattle as constructive trustee for Theodore and Marla; it further found that Marla should receive "one half of the increase of the cattle." Insufficient evidence having been presented at trial regarding the number of cattle, the District Court determined that further proceedings were necessary for purposes of determining the number of cattle, Marla's share of the cattle and of any proceeds from the sale of cattle, and the amount of attorney fees to be awarded to Marla.

Theodore's father filed a motion to amend or for a new trial, which the court denied, and further proceedings were held relating to the cattle. On January 19, 1996, the District Court filed an Order and Memorandum containing its findings with regard to the total number of cattle and the number to which Marla was entitled as "one-half of the increase in the cattle during the marriage . . . ." It also found that Marla was entitled to judgment in the amount of $2,678.71 representing her marital share of livestock sold before the livestock inventory was taken, and $10,000 for reasonable attorney fees. Judgment was entered thereon on January 31, 1996.

Thereafter, the McFarlands moved for relief from the judgment pursuant to Rule 60(b)(6), M.R.Civ.P. Marla responded, a hearing was held, and the District Court denied the McFarlands' motion on March 4, 1996.

On March 27, 1996, Marla filed a motion which was styled as a Rule 60(a), M.R.Civ.P., motion to correct alleged clerical mistakes

in the court's order specifying the number of livestock and amount of sale proceeds set over to her and in the judgment entered in the case on January 31, 1996. Marla also moved for an order in aid of execution. The following day, the McFarlands moved for an order compelling Marla to enter a partial satisfaction of judgment. They claimed to have tendered to Marla the monetary amount of the judgment, plus interest thereon from the date of the judgment, conditioned on her execution of a partial satisfaction of judgment, and that she refused the tender. The parties filed memoranda in support of their own motions and in opposition to each other's motions.

On June 4, 1996, the District Court entered an order concluding that the time provided for ruling on Marla's postjudgment motion had passed and, as a result, that her motion was deemed denied by operation of law. The court also entered an order granting the motion to compel Marla to execute a partial satisfaction of judgment satisfying the portion of the judgment requiring payment to her of $12,678.71.

Marla appeals from both of the June 4, 1996, orders. Additional facts are set forth below as necessary to our discussion and resolution of the issues before us.

> Did the District Court err in concluding that Marla's postjudgment motion was deemed denied by operation of law?

The District Court concluded that Marla's postjudgment motion had been deemed denied pursuant to Rule 60(c), M.R.Civ.P., due to its failure to rule on the motion within the time provided therein.

4

Marla's sole argument in this regard is that the Rule 60(c) time period does not apply to her motion because the motion was brought under Rule 60(a), M.R.Civ.P., and that the District Court committed reversible error in concluding otherwise. We review a trial court's conclusions of law to determine whether the interpretation of the law is correct. In re Marriage of Barnard (1994), 264 Mont. 103, 106, 870 P.2d 91, 93.

The Montana Rules of Civil Procedure provide that, if certain postjudgment motions are not ruled upon within 60 days, they are deemed denied. Specifically, the 60-day deemed denial governs motions for relief from judgment made under Rule 60(b), M.R.Civ.P., motions for new trial made under Rule 59(a), M.R.Civ.P., and motions to alter or amend judgment made under Rule 59(g), M.R.Civ.P. See Rules 60(c), 59(d), and 59(g), M.R.Civ.P.

In addition to the postjudgment motions referenced above, however, a party may file a postjudgment motion for correction of clerical mistakes in judgments or orders pursuant to Rule 60(a), M.R.Civ.P. By its terms, Rule 60(a), M.R.Civ.P., permits a trial court to correct clerical mistakes and errors arising from oversight or omission "at any time," whether on its own initiative or on motion of a party and after notice. In addition, the Rule 60(c) "deemed denial" period is expressly limited to Rule 60(b) motions and, therefore, does not apply to a Rule 60(a), M.R.Civ.P., motion.

This brief review of the Rules makes it clear that if Marla's motion was a Rule 60(a), M.R.Civ.P., motion to correct clerical

5

mistakes, the District Court erred in concluding that the motion was deemed denied by operation of law under Rule 60(c), M.R.Civ.P. Thus, we address whether Marla's motion was a Rule 60(a), M.R.Civ.P., motion to correct clerical mistakes.

The starting point for Marla's assertion of error is that her motion was styled a "Rule 60(a) Motion to Correct Clerical Mistakes." We are not bound, however, by the caption a party places on a motion; rather, it is appropriate to examine the substance of the motion. See Miller v. Herbert (1995), 272 Mont. 132, 135-36, 900 P.2d 273, 275. In the event of an issue over whether a motion is a mere motion to correct, the test is whether the requested change will merely make the record speak the truth as to what was determined or done, or intended to be determined or done, or whether the change will alter such action or intended action. Matters properly supporting a mere correction must be "apparent on the face of the record . . . ;" they cannot effectuate an actual change in the judgment rendered or change the rights fixed by the judgment. Morse v. Morse (1945), 116 Mont. 504, 508, 154 P.2d 982, 983-84 (citation omitted). Examining the specific requests for change or correction contained in Marla's postjudgment motion, in the context of the overall case and the record before us, we conclude that the motion was not a Rule 60(a), M.R.Civ.P., motion and, therefore, that it was deemed denied by operation of law.

The first "clerical mistake" of which Marla sought correction relates to one liability distributed to Theodore via the

6

dissolution and judgment thereon. In its November 13, 1995, findings, conclusions and order, the District Court set forth the parties' assets and liabilities in their entirety and distributed those assets and liabilities. Theodore was assigned all of the liabilities, including those at several banks and specifically including a liability at First Citizens Bank in the amount of $1,300; the District Court's conclusions of law incorporated the asset and liability distribution contained in its findings. The judgment entered thereon distributed the assets and liabilities accordingly, by attaching Exhibit A which reflected, among other things, the distribution of the $1,300 First Citizens Bank liability to Theodore.

In her motion, Marla requested "correction" of the judgment with regard to the First Citizens Bank liability to include specific enforcement language based on alleged events occurring after the judgment. She asserted that language requiring Theodore to make arrangements to either pay off the loan or to assume liability for the loan had been "inadvertently" omitted from the judgment. However, nothing on the face of the judgment, or in comparison to the earlier findings, conclusions and orders on which the judgment was entered, suggests that the failure to include such enforcement or payment provisions with regard to the First Citizens Bank liability was in the nature of a clerical mistake or that it was inadvertently omitted by the trial court contrary to its intent. The judgment does not include "enforcement" provisions with regard to any of the marital liabilities distributed to

Theodore and, indeed, judgments in dissolution proceedings ordinarily do not contain such language with regard to each and every liability distributed to a party. As a result, it is not possible to conclude that the District Court's failure to include such provisions with regard to the First Citizens Bank liability was inadvertent or a mere clerical error. In addition, particularly since the motion to "correct" in this regard was based on alleged postjudgment matters not of record, it is clear that the purported need for correction is not "apparent on the face of the record . . . ." See Morse, 154 P.2d at 983-84. We conclude that this portion of Marla's motion did not seek a mere clerical correction.

Marla's next request for a "clerical correction" was for the inclusion of costs pursuant to § 25-10-101, MCA, and expenses she incurred in her third-party action to recover her share of the cattle. She noted that she had prayed for this relief in her third-party complaint, that she was entitled to those costs as the prevailing party in the case, and that the District Court's judgment stated that, except for that portion of her attorney fees specifically awarded to her, the parties would be responsible for their own fees and costs. Her motion asserts that the court's inclusion of the word costs was a "mistake," since she was entitled to costs as a matter of law.

Marla's argument that the District Court's failure to award her costs is a "clerical mistake" is without merit. Whatever the legal merits of Marla's underlying request for costs, it is clear

8

that the District Court rejected that request when it included in its judgment that each party would be responsible for costs incurred. A court's action on substantive relief requested by a party, even if erroneous, is not a mere clerical mistake; it is an affirmative and intended act by the court. Such an act may be subject to revision pursuant to a Rule 59, M.R.Civ.P., motion to alter or amend or a Rule 60(b), M.R.Civ.P., motion for relief from judgment, but it is not subject to revision pursuant to a Rule 60(a), M.R.Civ.P., motion to correct clerical mistakes because it would alter the action taken or intended to be taken. See Morse, 154 P.2d at 984.

Marla's next requested "correction" of a "clerical mistake" was her request that the exhibit to the District Court's judgment which set forth the numbers of cattle of various types and the distribution of those cattle to Marla and Theodore be "corrected" to reflect the District Court's consistently stated intent that she receive half of the increase in the herd which occurred during the parties' marriage. Again, we disagree that Marla's request was for a mere "correction of a clerical mistake" in the judgment rather than a substantive change--in her favor--in the rights fixed by that judgment.

The District Court determined that Theodore had 22 head of cows at the time of the parties' marriage. Marla does not dispute this determination and, indeed, she describes those cows as pregnant cows. The District Court determined that the cattle which constituted a marital asset were 86 cows, 12 heifers, 84

9

calves and 3 herd bulls. The District Court awarded Marla 32 cows, 4 heifers, 31 calves and 1 herd bull. It is clear that the District Court subtracted the 22 premarital cows from the 86 marital asset cows, leaving 64 cows; the court then awarded Marla 32 of those cows--precisely half the increase in the number of cows during the parties' marriage. Likewise, the court came very close to awarding Marla half of the heifers and half of the herd bulls which constituted the marital asset.

Marla's primary argument is that the number of calves she was awarded does not reflect the District Court's clear intent to award her half of the increase in the herd during the marriage. By her reckoning, she was entitled to precisely half the 84 calves which were part of the marital asset, or 42 calves, and was awarded only 31 calves. Thus, she sought what she perceives to be a mere "mathematical correction" in the judgment to reflect her 50% share of the calves.

Given the more general "half of the increase" approach as contrasted with the District Court's specific itemization of the number of the various types of cattle to which Marla was found to be entitled, we cannot say that the record before us clearly reflects that the District Court intended its general determination to control over its specific numerical distribution. Moreover, Marla's math is too direct, in this instance, as it fails to take into account her own description of the premarital cows as pregnant cows. Since the cows were premarital and it is undisputed that the District Court properly deducted them from the total number of cows

10

to determine that the increase during the parties' marriage was 64 cows, the same also must be true of the calves those cows were carrying at the time of the marriage. Thus, the 22 calves being carried by the premarital cows at the time of the marriage properly can be deducted from the total number of calves in order to arrive at the increase in the number of calves during the parties' marriage. By that calculation, the 84 calves by which the herd increased during the marriage must be reduced by the 22 premarital calves, for an increase of 62 calves during the marriage, of which Marla was entitled to 31 under the court's "one half of the increase" approach. That is the precise number of calves awarded to Marla by the District Court. On that basis, we cannot conclude that increasing the number of calves awarded to Marla from 31 to 42 would be a mere mathematical correction to reflect the District Court's intent in specifying that Marla should receive "half of the increase" in the herd.

The next "clerical mistake" Marla sought to "correct" via her postjudgment motion was the omission of certain cattle from the judgment. She contends that the number and description of heifers born in 1994, calves born in 1995 and herd bulls must be added to the judgment in order to ensure that she receives her share of the cattle which the District Court determined were marital assets. While her argument in this regard is not particularly clear, what Marla seeks appears to be a substantive addition to the judgment or to the District Court's findings regarding the number of cattle determined to be a marital asset. While such a revision may have

11

been appropriate under some other rule of civil procedure, it could not be accomplished via a Rule 60(a), M.R.Civ.P., motion.

Marla also requested correction of a "clerical mistake" or mere mathematical error with regard to the $2,678.71 to which the District Court found she was entitled as her share of the proceeds of certain cattle sold before the livestock inventory taken on November 27, 1995, and which the court included in its judgment dated January 31, 1996. According to Marla, the total proceeds from the cattle sold in May and June of 1995 were $8,036.44 and, under the court's "one half of the increase" approach, she was entitled to a judgment of half that amount, or $4,018.22. She sought to have the judgment "corrected" in this regard.

While Marla's math is correct, scrutiny of both the District Court's findings after further proceedings regarding the cattle and its judgment entered thereon establishes that her motion did not seek a mere correction in math. The District Court's "one half of the increase" approach clearly related to an equitable distribution of the livestock inventoried as of November 27, 1995; the court did not make a "one half of the increase" finding with regard to the proceeds from the sale of cattle prior to that time. Rather, the District Court found that Marla's marital share of the sale proceeds was the sum certain of $2,678.71. On that basis, Marla's request for additional sale proceeds sought a substantive change in the findings and judgment which could not be accomplished via a Rule 60(a), M.R.Civ.P., motion.

Marla's final request for correction of a "clerical mistake"

12

in the District Court's January 19, 1996 findings and its January 31, 1996 judgment relates to calf weight slips dated February 14, 1996, and an appraisal of the cattle herd dated February 27, 1996, which purport to show that additional cattle should have been included as marital assets. Since Marla's motion established the date of these documents as after the proceedings regarding the cattle, the court's findings and the judgment, they could not have been matters of record at the time of the District Court's findings or judgment which Marla's motion purportedly sought to "correct." Marla's request in this regard is to reopen and relitigate substantive matters already concluded by the January 31, 1996, judgment. As such, the request was not for the correction of a clerical mistake under Rule 60(a), M.R.Civ.P.

We conclude that Marla's postjudgment motion was not a Rule 60(a), M.R.Civ.P., motion to correct clerical errors. Such a motion is the only postjudgment motion not subject to deemed denial after 60 days under either Rule 59(d), Rule 59(g), or Rule 60(c), M.R.Civ.P. The sole argument Marla makes on appeal from the order determining that her postjudgment motion was deemed denied is that the District Court erred in applying the deemed denial time limits to her motion. We hold that the District Court did not err in concluding that Marla's motion was deemed denied by operation of law.

> Did the District Court err in granting Theodore's motion compelling Marla to execute a partial satisfaction of judgment?

As set forth above, Theodore sought an order compelling Marla

13

to execute a partial satisfaction of judgment. The District Court granted Theodore's motion and Marla appeals.

Marla's argument in this regard hinges entirely on her having succeeded in her position on the first issue in this case. Assuming that we will have vacated the District Court's "deemed denied" determination, she argues here that the amount of money set forth in the District Court's judgment will be inadequate and, therefore, that she is not required to execute a partial satisfaction of judgment in the amount previously awarded.

We have concluded above, however, that Marla's postjudgment motion was not a Rule 60(a), M.R.Civ.P., motion and that the District Court did not err in determining that her motion was deemed denied by operation of law. As a result, we need not address this issue further and we affirm the District Court's order granting Theodore's motion.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

14